**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FENGYUN MA,<br>Petitioner,<br>v.<br>JAMES JANECHA, Warden, et al.,<br>Respondents. | **CASE NO.** 5:26-CV-04484-CTS<br><br>**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS**<br>(A 216-864-940) |

## I. INTRODUCTION

On August 8, 2026, Petitioner Fengyun Ma ("Petitioner"), represented by counsel, filed a Petition for Writ of Habeas Corpus ("Petition"). (Pet., ECF No. 1.) The Petition alleges that Petitioner is in the custody of the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE") in Adelanto, California, and that he is being held in violation of the Constitution and laws of the United States. (*See generally id.*) The Petition names as Respondents James Janecha, the Warden of the Adelanto ICE Processing Center; Jaime Rios, Field Office Director, Adelanto, Office of Detention and Removal, ICE; Todd M. Lyons, Acting Director, ICE; Todd Blanche, Attorney

General of the United States; and Markwayne Mullin, Secretary of DHS.[1] ("Respondents"). (*Id.* at 1.[2]) On August 17, 2026, Respondents filed an Answer to the Petition (Ans., ECF No. 7) and Petitioner filed his Reply (Rep., ECF No. 8). For the reasons set forth below, the Court GRANTS the Petition as to the First Claim for Relief, dismisses the remaining claims as moot, and ORDERS that Petitioner be released from custody immediately.

## II. BACKGROUND

The Petition[3] alleges that Petitioner is a sixty-two-year-old citizen of China. (Pet. ¶¶ 1, 15.) Petitioner is a member of the China Democratic Party, and he fled China in 2018 because Chinese authorities were targeting him and retaliating against him and his family. (*Id.* at ¶ 17.) On July 11, 2019, Petitioner was lawfully admitted to the United States at Los Angeles International Airport as a B-2 nonimmigrant visitor and authorized to remain until January 11, 2020. (*Id.* at ¶ 18.) On February 18, 2020, Petitioner filed a Form I-589, Application for Asylum and

///

---

[1] The caption page lists "Todd Blanche, in his Official Capacity, Secretary, U.S. Department of Homeland Security" and "Markwayne Mullin, in his Official Capacity, Attorney General of the United States" (Pet. 1), and the Petition alleges that "Todd Blanche is the Secretary of Homeland Security" and "Markwayne Mullin is the Attorney General of the United States" (*id.* at ¶ 16). The Court presumes the Petition intends to name as Respondents Todd Blanche, who is the Attorney General of the United States, and Markwayne Mullin, who is the Secretary of DHS.

[2] Pinpoint citations refer to paragraphs and, where none, to the page numbers in the CM/ECF-generated headers of filed documents.

[3] The Petition attaches Exhibits 1 through 4 as follows: (1) EOIR automated case information for Petitioner; (2) Petitioner's son's birth certificate and Petitioner's marriage certificate; (3) Immigration Judge Steven Caley's June 1, 2021 order granting bond and Immigration Judge Curtis G. White's April 17, 2025 decision denying bond; and (4) a legal brief regarding a Red Notice. (Pet., Exs. 1–4, ECF Nos. 1-1–1-4.)

Withholding of Removal, with United States Citizenship and Immigration Services ("USCIS"), which is pending. (*Id.* at ¶ 19.)

In the spring of 2021, ICE's Los Angeles Fugitive Alien Removal team arrested Petitioner at the USCIS office in Tustin, California, where he had appeared for a scheduled interview regarding his application for asylum. (*Id.* at ¶ 20.) The referral that produced the arrest came from a lead identifying Petitioner as the subject of an INTERPOL Red Notice issued on behalf of the Government of China, charging Petitioner with "picking quarrels and provoking trouble" under Article 293 of the Criminal Law of the People's Republic of China, which was allegedly an act of political reprisal. (*Id.* at ¶¶ 20, 33–38.) DHS charged Petitioner under Immigration and Nationality Act ("INA") § 237(a)(1)(B) (overstay of a nonimmigrant admission) and he was transferred to a GEO facility in Aurora, Colorado, where he was detained. (*Id.* at ¶ 21.) On May 10, 2021, DHS filed with the Aurora Immigration Court a Notice of Filing, with the four-page INTERPOL Red Notice as its only exhibit. (*Id.* at ¶ 22.) On June 1, 2021, Immigration Judge ("IJ") Steven Caley granted Petitioner's request for a change in custody status and ordered him released on a bond of $10,000. (*Id.* at ¶ 23.) Petitioner posted the bond and was released. (*Id.*)

For the following three-and-a-half years, Petitioner lived openly and lawfully, appeared at every immigration hearing, accrued no criminal history, and built community ties. (*Id.* at ¶¶ 24–26.) On May 8, 2024, Petitioner and Xiaojuan Wang took title as joint tenants to a home in Fontana, California. (*Id.* at ¶ 25.) On July 20, 2024, Petitioner and Ms. Wang were married in Clark County, Nevada. (*Id.*) The couple share a United States citizen child, born in December 2017 in the Northern Mariana Islands. (*Id.*; Ex. 2.)

On February 5, 2025, Petitioner was arrested at his house by ICE, and he has been detained continuously for more than eighteen months since. (*Id.* at ¶¶ 4, 28–29.) On April 8, 2025, through counsel, Petitioner moved for a bond hearing before

the Immigration Court pursuant to 8 C.F.R. § 1003.19, supported by citizenship documents, Petitioner's marriage certificate, the recorded grant deed to the family home, utility bills, a tax return, bank statements, and letters of support. (*Id.* at ¶ 30.) The matter was set before IJ Curtis G. White. (*Id.*) On April 16, 2025, DHS filed a bond redetermination submission, consisting of the same documents considered by IJ Caley in 2021. (*Id.* at ¶ 31.) On April 17, 2025, IJ White denied bond, but did not identify any change in circumstances since the 2021 bond grant, address Petitioner's ability to pay bond, or analyze whether alternatives could mitigate any perceived risk. (*Id.* at ¶ 32.)

The Answer[4] does not dispute these allegations but adds that Petitioner received a hearing on August 11, 2025, during which the IJ concluded that bond was denied due to "danger to the community and flight risk." (Ans. 2.)

## III. PETITIONER'S CLAIMS

Petitioner challenges his detention on four grounds, each for Violation of the Fifth Amendment Due Process Clause, framed as follows: (1) Procedural Due Process: Re-Detention of a Non-Citizen Previously Released on Bond, Without a Pre-Deprivation Hearing and Without Any Change in Circumstances (Pet. ¶¶ 39–43); (2) Due Process/Abuse of Discretion: The Bond Denial Fails the Clear-and-Convincing Standard and Ignores Ability to Pay and Alternatives to Detention (*id.* at ¶¶ 44–48); (3) Due Process/Abuse of Discretion: The Flight-Risk Finding Rests on an Unreliable and Politically Motivated INTERPOL Red Notice (*id.* at ¶¶ 49–53); and (4) Due Process: Eighteen Months of Continued Detention Is Not

[4] The Answer attaches Exhibits 1 through 4 as follows: (1) IJ Caley's August 11, 2025 order denying bond; (2) Form I-213; (3) IJ White's June 1, 2021 order granting bond under 8 C.F.R. § 1236; and (4) a document entitled "Addendum of Law," that was apparently served on Plaintiff on April 17, 2025. (Ans., Exs. 1–4, ECF Nos. 7-1–7-4.)

Reasonably Related to Any Legitimate Purpose (*id.* at ¶¶ 54–57). He seeks the following: declaratory relief; immediate release; injunctive relief in the form of enjoining Respondents from re-arresting or re-detaining Petitioner on the basis of the unlawful bond determination, the INTERPOL Red Notice, or otherwise without first affording him notice and a hearing before a neutral arbiter where the Government bears the burden of proving, by clear and convincing evidence, that Petitioner is a danger or a flight risk; in the alternative, an order that Petitioner be afforded a bond hearing within seven days at which the Government bears the burden of proof by clear and convincing evidence and the adjudicator must consider Petitioner's ability to pay and alternatives to detention; and attorneys' fees and costs under Equal Access to Justice Act ("EAJA"). (*Id.* at 15.)

## IV. LEGAL STANDARD

Writs of habeas corpus may be granted by the federal courts to noncitizens in the custody of immigration authorities. 28 U.S.C. § 2241(c)(3) ("The writ of habeas corpus" extends to individuals "in custody in violation of the Constitution or laws or treaties of the United States."); *Doe v. Garland*, 109 F.4th 1188, 1194 (9th Cir. 2024) (holding that petition challenging alien's detention without bond hearing fell within the "core of habeas"). The writ is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004).

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). "The fundamental requirement of due process is the opportunity to be

heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. The government therefore may detain individuals outside of the criminal context only "in certain special and 'narrow' nonpunitive 'circumstances.'" *Id.* (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)).

As the Supreme Court has repeatedly held, under most circumstances, "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original) (collecting cases). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). Thus, while "in some circumstances the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release].'" *Id.* (alterations in original) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). The liberty of a person who has been released from government custody is valuable and falls within the protection of the Due Process Clause. *Morrissey*, 408 U.S. at 482; *Pinchi*, 792 F. Supp. 3d at 1032.

Courts generally apply the three-part test articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to determine what procedures are constitutionally sufficient to protect a liberty interest. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022) ("assuming without deciding" that *Mathews* applied and applying test in immigration detention context); *Pinchi*, 792 F. Supp. 3d at 1033, 1033 n.2

(discussing Ninth Circuit's treatment of *Mathews*); *Perez Bueno v. Janecka*, No. 5:25-CV-03376-CAS-BFM, 2026 WL 309934, at *3 (C.D. Cal. Feb. 5, 2026) (applying *Mathews* test and ordering immediate release of noncitizen asylum applicant previously released on own recognizance by DHS who was detained again without pre-detention notice or hearing). Under that test, courts consider (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

## V. DISCUSSION

Among other claims, Petitioner alleges a violation of his Fifth Amendment procedural due process rights arising from the revocation of the bond that was granted to him in 2021. (Pet. ¶¶ 39–43.) In many recent decisions, courts have granted habeas relief to petitioners in similar circumstances, finding that immigration authorities violated due process by re-detaining, without notice or an opportunity to be heard, noncitizens who had been detained by ICE sometime after entering the United States but were then released from custody. *See, e.g.*, *Sierra Bernal v. Janecka*, No. 5:26-CV-03116-DMK, 2026 WL 2138827, at *1 (C.D. Cal. July 17, 2026) (granting habeas petition filed by noncitizen from Colombia who had been detained by DHS when she entered the United States in April 2023, was then released and placed in an Alternatives to Detention supervision program, but was later re-detained after appearing for an immigration court hearing without notice that her release was being revoked or opportunity to contest her re-detention); *Singh v. Janecka*, No. 5:26-CV-01466-AYP, __ F. Supp. 3d __, 2026 WL 1334832, at *2, 6 (C.D. Cal. May 8, 2026) (granting habeas petition filed by

noncitizen from India who had been detained by DHS when he entered the United States in June 2024, was then released and placed in an Alternatives to Detention supervision program, but was later re-detained after appearing for an immigration court hearing without notice of the reasons for his arrest). Consistent with these decisions, and as discussed below, the Court finds that Petitioner's re-detention—without prior notice or a meaningful opportunity to be heard—violates due process and merits relief.

**A. Petitioner Has a Protected Liberty Interest Under the Due Process Clause**

Courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State" and "the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989). With respect to the first question, it is well-established that freedom from government detention is a protected liberty interest. *See Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects.").

Particularly relevant here, the liberty of a person who has been released from government custody is valuable and falls within the protection of the Due Process Clause. *Morrissey*, 408 U.S. at 482. A parolee "relie[s] on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee," and as such, a parolee possesses a protected interest in his continued liberty. *Id.* "Just as people on preparole, parole, and probation status have a liberty interest, so too does [petitioner] have a liberty interest in remaining out of custody on bond." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019). "[E]ven

when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, *after that individual is released from custody [he] has a protected liberty interest in remaining out of custody*." *Pinchi*, 792 F. Supp. 3d at 1032 (emphasis added). Thus, "[w]hen DHS released [Petitioner] . . . after determining that he was [neither] a danger nor a flight risk, it conferred a conditional liberty interest that may not be withdrawn without constitutionally sufficient process." *Singh*, 2026 WL 1334832, at *2. Accordingly, the Court concludes that Petitioner has a protected liberty interest in his continued freedom from custody.

**B. Petitioner's Re-Detention Violates Due Process**

As Petitioner has a protected liberty interest, the Court must next determine what procedural protections are due to protect that interest, balancing the *Mathews v. Eldridge* factors: (1) the private interest at stake; (2) the risk of erroneous deprivation; and (3) the government's interest. *Mathews*, 424 U.S. at 335; *Pinchi*, 792 F. Supp. 3d at 1033; *Singh*, 2026 WL 1334832, at *2.

With respect to the first *Mathews* factor, Petitioner has, without any doubt, a liberty interest—remaining out of custody—that is substantial. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Numerous recent decisions have found that a petitioner's interest in remaining out of ICE custody after release under supervision weighs strongly in that petitioner's favor when balancing the *Mathews* factors. *E.g.*, *Singh*, 2026 WL 1334832, at *3–4. There is no reason to reach a different result here. In 2021, Petitioner was released after IJ Caley determined that a $10,000 bond was sufficient to mitigate any danger or flight risk. (*Id.* at ¶ 23.) Thereafter, Petitioner lived free from custody for nearly four years, during which time he established significant community ties, married his wife, and purchased a

home where he lived with his family. (Pet. ¶¶ 24–26.) While Petitioner was subject to supervision "during this time, 'a person who is in fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles him to constitutional due process before he is re-incarcerated.'" *Singh*, 2026 WL 1334832, at *3 (quoting *Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017)). Further, Respondents do not argue that Petitioner does not have a substantial liberty interest in remaining out of custody. (*See generally* Ans.) Thus, the Court finds that the first *Mathews* factor weighs strongly in Petitioner's favor.

The second *Mathews* factor also weighs in Petitioner's favor. The risk of an erroneous deprivation of a liberty interest is high when no process is provided prior to the deprivation of that interest, and the Supreme Court therefore "usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon*, 494 U.S. at 127. Thus, many recent decisions have found the risk of an erroneous deprivation of a liberty interest to be high for noncitizens paroled into the United States whose parole was revoked without pre-deprivation process. *See*, *e.g.*, *Rankbirsingh v. Giles*, No. 5:26-CV-00907-FLA (PVC), 2026 WL 1455421, at *6 (C.D. Cal. May 20, 2026) ("The court finds the risk of an erroneous deprivation of Petitioner's liberty interest was substantial based on Respondents' failure to provide any notice of, explanation for, or opportunity to be heard regarding Petitioner's arrest and re-detention, and the revocation of his bond."); *Perez Bueno*, 2026 WL 309934, at *4 (finding that "the risk of erroneous deprivation of liberty is high absent the procedural safeguard of a pre-deprivation hearing before a neutral decisionmaker); *Hasratyan v. Bondi*, No. 5:26-CV-00210-MCS-ADS, 2026 WL 288909, at *3 (C.D. Cal. Feb. 2, 2026) ("There is an unacceptably high risk that the government would erroneously deprive—or already has erroneously deprived—Petitioner of her liberty interest absent a pre-detention hearing."). Here, Petitioner was provided with no pre-deprivation notice of the reasons for his re-detention or opportunity to contest those

reasons. (*See* Pet. ¶¶ 5, 28, 43.) And Respondents do not dispute that Petitioner was not provided individualized reasons for the revocation of his bond or the opportunity to contest this revocation when he was re-arrested on February 5, 2025. (*See generally* Ans.) Accordingly, the Court finds that the second *Mathews* factor weighs strongly in Petitioner's favor.

Finally, the third *Mathews* factor also weighs in Petitioner's favor. "Although the Government has a legitimate interest in enforcing the immigration laws, that interest does not overcome the Fifth Amendment's requirement that constitutional procedural safeguards be provided before re-detaining a person who has been safely residing in the community." *Singh*, 2026 WL 1334832, at *5. Respondents' interest in re-detaining Petitioner without notice, reasoning, and an opportunity to be heard is low. *See Pinchi*, 792 F. Supp. 3d at 1036 ("[T]he government has articulated no legitimate interest that would support arresting [petitioner] without a pre-detention hearing."); *Ortega*, 415 F. Supp. 3d at 970 ("If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). "[A]s many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously paroled noncitizens like petitioner without a pre-detention hearing." *Hasratyan*, 2026 WL 288909, at *4. Further, Respondents here offer no argument that might constitute a meaningful, countervailing government interest to weigh against Petitioner's right to due process before being re-detained. (*See generally* Ans.)

In fact, Respondents have not just failed to offer any argument in opposition to any of the elements of Petitioner's due process claim—they fail to acknowledge Petitioner's First Claim for Relief at all. (*See generally* Ans.) The Answer consists solely of two arguments: first, that Petitioner's April 11, 2025 bond hearing was "legally adequate," and second, that Petitioner failed to exhaust administrative remedies because his appeal of that hearing is pending. (Ans. 2–7.) However,

neither of these arguments address Petitioner's claim that, irrespective of whether the ultimate decision to deny bond was legally adequate, the revocation of the initial decision to grant bond violated his procedural due process rights. (*Compare* Pet. ¶¶ 39–42 *with id.* at ¶¶ 43–53.)

It thus appears, from the record before the Court, that: (1) Petitioner had a substantial private liberty interest in remaining out of custody; (2) the risk of erroneous deprivation of this liberty interest was high absent the procedural safeguard of a pre-deprivation hearing before a neutral decisionmaker; and (3) no countervailing government interest has been identified that could outweigh the need to protect Petitioner's liberty interest with a pre-deprivation hearing. The Due Process Clause therefore entitled Petitioner to notice and a hearing prior to any re-arrest or detention. As no suggestion has been made that such process was provided prior to his February 5, 2025 re-detention, that re-detention violated the Due Process Clause. *See Singh*, 2026 WL 1334832, at *5 (finding that "Respondents' re-detention of Petitioner . . . without adequate pre-deprivation process, violated due process").[5]

**C. Remedy**

As discussed above, Petitioner has shown that his due process rights were violated. As many other courts have held in recent months, the appropriate remedy for such a violation is to place Petitioner in the position he was in prior to the violation—that is, he should be released from custody under the same conditions that governed his prior release. *E.g.*, *Badalyan v. Bondi*, No. ED CV 26-1401 FMO (JDE), 2026 WL 1365087, at *1 (C.D. Cal. May 15, 2026); *Singh*, 2026 WL 1334832, at *6. The Court therefore "concludes that 'Petitioner's release is

[5] Some of Petitioner's other claims may also have merit, but in light of the relief awarded on his First Claim for Relief, it is unnecessary to address them at this time.

necessary to return him to the status quo.'" *R.N.G. v. Semaia*, No. 5:26-CV-2839-DSR, __ F. Supp. 3d __, 2026 WL 2089544, at *8 (C.D. Cal. July 14, 2026) (quoting *Nazarian v. Noem*, No. 5:25-cv-2694-KK-ADS, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025)).

Petitioner has also requested permanent injunctive relief barring Respondents from re-arresting or re-detaining him "without first affording him notice and a hearing before a neutral arbiter where the Government bears the burden of proving, by clear and convincing evidence, that he is a danger or a flight risk." (Pet. 15.) Again, the Answer fails to address this claim, effectively conceding that some form of injunctive relief is merited here. Accordingly, the Court ENJOINS Respondents from re-detaining Petitioner absent a pre-deprivation hearing before a neutral decisionmaker at which the government establishes by clear and convincing evidence that detention is appropriate to prevent his flight or to protect the public.

## VI. CONCLUSION

IT IS THEREFORE ORDERED THAT:

1. Judgment shall be entered GRANTING the Petition as to the First Claim for Relief and dismissing the remaining claims without prejudice as moot in light of the relief awarded on the First Claim for Relief;
2. Respondents MUST RELEASE Petitioner **Fengyun Ma (A 216-864-940)** from custody within 24 hours of entry of this Order under the same conditions of release that were in place prior to February 5, 2025; and
3. Respondents are ENJOINED, until and unless a final order of removal is entered against Petitioner, from re-detaining Petitioner absent a pre-deprivation hearing before a neutral decisionmaker at which the

///

///

///

government establishes by clear and convincing evidence that detention is appropriate to prevent his flight or to protect the public.[6]

DATED: September 17, 2026

HONORABLE CHRISTINA T. SHAY
UNITED STATES MAGISTRATE JUDGE

[6] If Petitioner wishes to seek attorney's fees or costs, he may do so pursuant to this Court's Local Rules.